**IN THE US DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STANLEY BLACK & DECKER, INC., | ) | |
| THE STANLEY BLACK & DECKER | ) | |
| CORPORATION, and BLACK & DECKER | ) | Case no. 1:22-cv-3135 |
| (U.S.) INC., d/b/a DEWALT INDUSTRIAL | ) | |
| TOOL CO., | ) | |
| | ) | |
| Plaintiffs, | ) | Judge Gary Scott Feinerman |
| v. | ) | |
| | ) | |
| JCB INC., JCB MANUFACTURING, INC., | ) | |
| VIRTUAL SUPPLY, INC. d/b/a/ | ) | |
| BLUEDEALZ, and YELLOW & BLACK | ) | |
| TOOLS LTD., | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER AND COUNTERCLAIM

Defendants ("JCB") respectfully respond to Plaintiffs' complaint as follows:

### NATURE OF CASE

1.     This Complaint includes claims for trademark infringement under 15 U.S.C. § 1051 et seq.; for unfair competition, false designation of origin, and trade dress infringement in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a); and for Illinois State statutory and common law trademark infringement, unfair competition, and deceptive trade practices.

ANSWER:     JCB admits that the plaintiffs' complaint purports to state causes of action as

recited and admits that, on that basis, the court has subject matter jurisdiction over the claims.

JCB otherwise denies the allegations of the paragraph, and specifically denies any infringement,

unfair competition, or deceptive trade practices, and denies that any of the defendants have

conducted any acts in this forum that subject them to specific or general jurisdiction as alleged.

### PARTIES

2.     Plaintiff Stanley Black & Decker, Inc. ("SBD") is a Connecticut corporation having its principal place of business located at 1000 Stanley Drive, New Britain, Connecticut 06053. SBD is the successor-in-interest to The Stanley Works.

ANSWER:    JCB is without knowledge or information sufficient to form a belief as to the truth

of the allegations of this paragraph and, on that basis, denies the same.

3.    Plaintiff The Black & Decker Corporation ("BDC") is a Maryland corporation having its principal place of business at 701 East Joppa Road, Towson, Maryland 21286. BDC is a subsidiary of SBD. BDC owns all trademark and trade dress rights relating to products sold under the DEWALT® brand name.

ANSWER:    JCB is without knowledge or information sufficient to form a belief as to the truth

of the allegations of this paragraph and, on that basis, denies the same.

4.    Plaintiff Black & Decker (U.S.) Inc. d/b/a DeWalt Industrial Tool Co. ("BDUS") is a Maryland corporation having its principal place of business at 701 East Joppa Road, Towson, Maryland 21286. BDUS is the exclusive seller and distributor in the United States of "DEWALT Products" (as that term is defined in paragraph 9 below) and is the United States licensee, from BDC, of all trademark and trade dress rights associated with DEWALT Products.

ANSWER:    JCB is without knowledge or information sufficient to form a belief as to the truth

of the allegations of this paragraph and, on that basis, denies the same.

5.    Defendant JCB Inc. is a Maryland corporation having a place of business at 2000 Bamford Boulevard, Pooler, Georgia 31322. Among other things, JCB Inc. manufactures, offers to sell, sells, promotes, and/or advertises power tools and accessories in the United States and elsewhere under the JCB brand name, including the products accused of infringement in this action.

ANSWER:    JCB Inc. admits the allegations of the first sentence of this paragraph, but denies

the other allegations.  Specifically, neither JCB Inc nor JCB Manufacturing Inc manufactures,

offers to sell, sells, promotes, and/or advertises power tools and accessories in the United States

and elsewhere under the JCB brand name, including the products accused of infringement in this

action.  JCB Manufacturing Inc and JCB Inc.'s business involves the manufacture and supply of

various items of construction and agricultural machinery.

6.    Defendant JCB Manufacturing, Inc. is a Georgia corporation having a place of business at 2000 Bamford Boulevard, Pooler, Georgia 31322. Among other things, JCB Manufacturing, Inc. manufactures, offers to sell, sells, promotes, and/or advertises power tools and accessories in the United States and elsewhere under the JCB brand name, including the products accused of infringement in this action.

ANSWER:    JCB Manufacturing, Inc. admits the allegations of the first sentence of this

paragraph, but denies the other allegations of this paragraph.

7.    Defendant Virtual Supply, Inc. d/b/a BlueDealz is an Oregon corporation having a place of business at 5825 Southwest Arctic Drive, Beaverton, Oregon 97005. Among other things, Virtual Supply, Inc. d/b/a BlueDealz sells and distributes power tools and accessories in the United States and elsewhere under the JCB brand name, including the products accused of infringement in this action.

ANSWER:    Admitted to the extent that the defendants understand which products the

plaintiffs are claiming to be infringements.

8.    Defendant Yellow & Black Tools Ltd. is a private limited company registered under the laws of England and Wales. Yellow & Black Tools Ltd. maintains a registered office at Unit 55, Romsey Industrial Estate, Greatbridge Road, Romsey, United Kingdom, SO51 0HR. Among other things, Yellow & Black Tools Ltd. manufactures, offers to sell, sells, promotes, and/or advertises power tools and accessories in the United States and elsewhere under the JCB brand name, including the products accused of infringement in this action.

ANSWER:    Admitted to the extent that the defendants understand which products the

plaintiffs are claiming to be infringements.

**PLAINTIFFS' YELLOW AND BLACK TRADEMARK AND TRADE DRESS RIGHTS**

9.    Plaintiffs are renowned in the United States and around the world as a leading manufacturer and marketer of power tools, battery packs and chargers for power tools, power tool accessories, hand tools, tool kits, storage systems, and a wide variety of other products for home improvement, consumer, industrial, and professional use. Long before Defendants' acts described herein, Plaintiffs marketed, and continue to market, power tools, battery packs and chargers for power tools, power tool accessories, tool kits, and packaging containing these products in connection with the trademarks and trade dress associated with the DEWALT® brand, including the well-recognized and distinctive yellow and black color combination (collectively, "DEWALT Products"). Plaintiffs are associated with, and are the official source of, DEWALT Products.

ANSWER:    JCB is without knowledge or information sufficient to form a belief as to the truth

of the allegations of this paragraph and, on that basis, denies the same.

10.    Trademarks and trade dress associated with the DEWALT Products, including the well-recognized and distinctive yellow and black color combination, appear on Plaintiffs' DEWALT Products, as well as the packaging and advertisements related to such DEWALT Products. Plaintiffs' DEWALT Products have long been desirable and popular.

ANSWER:     JCB is without knowledge or information sufficient to form a belief as to the truth

of the allegations of this paragraph and, on that basis, denies the same.

11.     Plaintiffs have invested substantial time, money, and effort in building up and
developing consumer recognition, awareness, and goodwill in the DEWALT Products.

ANSWER:     JCB is without knowledge or information sufficient to form a belief as to the truth

of the allegations of this paragraph and, on that basis, denies the same.

12.     The DEWALT Products are sold through nearly all the leading department stores,
hardware stores, and other legitimate retail outlets such as Home Depot, Lowe's Home
Improvement, Ace Hardware, True Value, and other major retailers throughout the United States
and in Illinois in this jurisdiction. Additionally, the DEWALT Products are sold on several major
retailers' websites, such as HomeDepot.com and Lowes.com, as well as through Amazon.com
and Walmart.com. Notably, the products accused of infringement in this action are also sold on
Amazon.com and Walmart.com.

ANSWER:     JCB admits that the products that the Plaintiffs accuse of infringement in this

action are sold on Amazon.com.  JCB admits that some of those products also appear to be listed

on Walmart.com., but denies that it sells its products to Walmart, and is without sufficient

information to form a belief as to whether those are genuine JCB products.  JCB is without

knowledge or information sufficient to form a belief as to the truth of the other allegations of this

paragraph and, on that basis, denies the same.

13.     Since 1992, Plaintiffs have spent over half a billion dollars promoting the yellow
and black color combination used in association with DEWALT Products, and the trademarks
and trade dress associated with the DEWALT Products. As a result of Plaintiffs' extensive
advertising and promotion of the DEWALT Products, and many billions of dollars in sales, as
well as the distinctive yellow and black color scheme, DEWALT Products have become widely
and favorably known and recognized in the trade and among professional purchasers and users
(as well as "do- it-yourselfers") of such products as originating with Plaintiffs. The yellow and
black trademarks and trade dress associated with the DEWALT Products have become indicative
of high-quality power tools for use in industrial, commercial, professional, and "do-it-yourself"
applications.

ANSWER:     JCB is without knowledge or information sufficient to form a belief as to the truth

of the allegations of this paragraph and, on that basis, denies the same.

14.     As a consequence of these efforts and the enormous popularity of the DEWALT Products, the yellow and black colors used in the entire line of DEWALT Products have long been associated with Plaintiffs by purchasers and potential purchasers of such products. The non-functional color combination alone attracts customers and creates an immediate association with Plaintiffs' DEWALT Products and quality image.

ANSWER:     As understood, the allegations of this paragraph are denied.

15.     More than 20 years ago, in 1998, Judge Cacheris of the United States District Court for the Eastern District of Virginia issued an extensive opinion (after a one-week bench trial) finding that Plaintiffs' massive sales and marketing efforts "caused the distinctive yellow and black color scheme on the DeWalt line to achieve consumer recognition soon after its initial launch in the beginning of February, 1992." Black & Decker (U.S.) Inc. v. Pro-Tech Power Inc., 26 F. Supp. 2d 834, 851 (E.D. Va. 1998). "Professional power tool users began to associate yellow and black with DeWalt by March of 1992 and Black & Decker's aggressive marketing efforts certainly caused secondary meaning to arise by May of 1992 – after DeWalt demonstrations had occurred at construction sites and retail stores across the country, media coverage and marketing awards had generated widespread publicity about the DeWalt look, customer after customer had commented on the dramatic new colors in the DeWalt line, and Black & Decker already had sold $24 to $25 million in DeWalt tools." Id. (citations omitted).

ANSWER:     JCB admits that an opinion was issued and that the quoted language appears in the opinion, but denies any suggested implications from that.

16.     Survey evidence credited in Pro-Tech showed that 95% of the professional power tool users contacted believed that a power tool having yellow and black colors originated with a single source, while 85% of the total correctly associated that color scheme with Black & Decker or DEWALT. See Pro-Tech, 26 F. Supp. 2d at 851. Related "likelihood of confusion" surveys also elicited repeated, spontaneous mentions of DEWALT and Black & Decker. See id. At 852-853.

ANSWER:     JCB is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, on that basis, denies the same.

17.     As a consequence, Judge Cacheris held that Plaintiffs' DEWALT yellow and black colors enjoy "a level of consumer recognition that parallels the extent to which the public associates golden arches with the McDonald's Corporation." Pro-Tech, 26 F. Supp. 2d at 851. The DEWALT yellow and black color scheme, therefore, has achieved strong secondary meaning.

ANSWER:     JCB admits that the quoted language from the cited opinion appears to be accurate, but denies the other allegations of this paragraph.

5

18.     In a subsequent lawsuit filed by Plaintiffs against Atlas Copco for its use of an infringing yellow and black color scheme, the court in the Eastern District of Virginia entered a Consent Judgment Order on January 2, 2001, which "permanently enjoined" Atlas Copco from "selling, marketing or distributing electric power tools and packaging for such tools having a yellow and black color combination."

ANSWER:     JCB is without knowledge or information sufficient to form a belief as to the truth

of the allegations of this paragraph and, on that basis, denies the same.

19.     On April 10, 2002, the court in the Eastern District of Virginia entered a permanent injunction against other yellow and black tool infringers (Grex Power Tools and Frank Wong) in which Grex acknowledged infringement and that "Black & Decker has valid, enforceable, and protectable trademark and trade dress rights in its yellow and black color scheme for electric power tools and pneumatic tools."

ANSWER:     JCB is without knowledge or information sufficient to form a belief as to the truth

of the allegations of this paragraph and, on that basis, denies the same.

20.     More recently, on August 10, 2011, Plaintiffs filed suit in the Northern District of Illinois against another infringer of their yellow and black trademark and trade dress rights, Positec USA, Inc. (and subsequently RW Direct, Inc. in an amended complaint filed in the same action on August 9, 2012), which copied the DEWALT yellow and black packaging, among other things ("Positec Litigation"). After a jury verdict in Plaintiffs' favor, in early 2016, Positec and RW Direct ceased using the infringing yellow and black colors on their products and packaging.

ANSWER:     JCB admits that the identified lawsuit was filed and that there was a jury verdict,

but is without knowledge or information sufficient to form a belief as to the truth of the other

allegations of this paragraph and, on that basis, denies the same.

21.     On November 17, 2020, Plaintiffs filed suit in the Northern District of Illinois against hundreds of defendant internet stores that were selling yellow and black battery packs and chargers for power tools in the United States that infringed Plaintiffs' yellow and black trademark and trade dress rights. Plaintiffs obtained temporary restraining orders against the defendants, wherein said internet stores were taken down from their e-commerce platforms and their U.S.- based assets were frozen. Said defendants ultimately entered into settlement agreements with Plaintiffs, wherein they undertook to cease the sale of yellow and black battery packs and chargers as replacements for DEWALT battery packs and chargers and/or as compatible with DEWALT power tools.

ANSWER:     JCB is without knowledge or information sufficient to form a belief as to the truth

of the allegations of this paragraph and, on that basis, denies the same.

22.     Over the past 20+ years, Plaintiffs have also sent notice letters to dozens of companies marketing and selling yellow and black power tool products and accessories that infringed upon Plaintiffs' trademark and trade dress rights in their yellow and black color scheme. Each such company has permanently ceased its infringing activity and no longer uses Plaintiffs' iconic and distinctive yellow and black colors on power tool products, power tool accessories, packaging, and the like.

ANSWER:     JCB is without knowledge or information sufficient to form a belief as to the truth

of the allegations of this paragraph and, on that basis, denies the same.

23.     Further, in recent years, Plaintiffs have successfully enforced their yellow and black trademark and trade dress rights associated with the DEWALT Products against hundreds of infringing yellow and black power tools, chargers, and battery packs sold on Amazon.com. From 2021 to 2022 year-to-date alone, for example, Amazon – in response to Plaintiffs' takedown requests – removed from its website (i) more than 125 listings of infringing yellow and black battery packs, (ii) over 200 listings of infringing yellow and black battery pack chargers, and (iii) at least 25 listings of infringing yellow and black power tools.

ANSWER:     JCB is without knowledge or information sufficient to form a belief as to the truth

of the allegations of this paragraph and, on that basis, denies the same.

24.     As demonstrated above, Plaintiffs have made substantial efforts to police the marketplace and protect their interests in and to the yellow and black trademarks and trade dress associated with DEWALT Products. No one other than Plaintiffs and their licensees are authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the yellow and black trademarks and trade dress associated with DEWALT Products (and associated packaging) without the express written permission of Plaintiffs.

ANSWER:     JCB is without knowledge or information sufficient to form a belief as to the truth

of the allegations contained in the first sentence of this paragraph, and on that basis, denies the

same, and denies the allegations of the second sentence of this paragraph.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121; 28 U.S.C. § 1331, 1332(a), and § 1338(a)-(b); and 28 U.S.C. § 1367.

ANSWER:     JCB admits for purposes of this action that this court has subject matter

jurisdiction.

26.     This Court has personal jurisdiction over Defendants because, among other things, they each transact business in this District, for example, by manufacturing, offering to

sell, selling, promoting, and/or advertising the accused products in such a way as to reach customers in Illinois and this judicial district, including at least through Walmart's retail stores located in this District and/or Walmart's online website (www.walmart.com), as well as through other online websites such as Amazon (www.amazon.com; see also https://www.amazon.com/stores/JCB/page /2E865212-A398-43EE-8297-BDDCC5464CB4 (Defendants' Amazon storefront from which customers can purchase the accused products)).

ANSWER: The defendants deny responsibility for the products listed on Walmart.com, and neither JCB Inc. nor JCB Manufacturing Inc. have any involvement with any of the accused products. But, for the purposes of this action, the defendants do not dispute that the court has personal jurisdiction over them.

27. The accused products are "Sold by" and "Sold and shipped by" Defendant Virtual Supply, Inc. d/b/a BlueDealz on, for example, Amazon.com and Walmart.com, respectively, to customers throughout the United States, including in Illinois and this judicial district. (See, e.g., https://www.amazon.com/JCB-Tools-JCB-20JS-B-Jigsaw-Cordless/dp/B07WTQS38J; https://www.amazon.com/sp?ie=UTF8&seller=AMP860VP2CG0X&isAmazonFulfilled=0&asin=B07WTQS38J&ref_=dp_mbc_seller; https://www.walmart.com/ip/JCB-Tools-Hammer-Drill-Driver-Cordless-20-Volts-Drilling-Masonry-Yellow/819904801.)

ANSWER: To the extent that the term "accused products" is understood to refer to the JCB power tools referenced in the complaint, JCB admits that those products are sold on Amazon.com. JCB admits that some of those products also appear to be listed on Walmart.com., but denies that it sells its products to Walmart, and is without sufficient information to form a belief as to whether those are genuine JCB products. Only a portion of the genuine JCB products are handled by Virtual Supply, Inc. Nearly all of the US retail sales were made by Amazon (which purchased the products outside the US and imported them into the US on its own), and not by either Virtual Supply Inc. or by Yellow and Black Tools Ltd.

28. Further, the registered office address in Romsey, United Kingdom and website of Defendant Yellow & Black Tools Ltd., www.jcb-tools.com (which redirects to https://jcb-tools.co.uk/ and states in the "Terms & Conditions" that "We are Yellow & Black Tools Limited a company registered in England and Wales trading as JCB Tools. Our . . . registered office is at Unit 55 Romsey Industrial Estate, Greatbridge Road, Romsey, United Kingdom, SO51 0HR" (https://jcb-tools.co.uk/terms-conditions)), is listed on Defendants' accused products (and the associated packaging) purchased through Amazon.com and Walmart.com, for example, for delivery in the United States, including Illinois and this judicial district, as shown below:



ANSWER:   JCB admits that the website did in the past read as quoted.  To the extent that the

term "accused products" is understood to refer to the JCB power tools referenced in the

complaint, JCB admits that those products are sold on Amazon.com.  JCB admits that some of

those products also appear to be listed on Walmart.com., but denies that it sells its products to

Walmart, and is without sufficient information to form a belief as to whether those are genuine

JCB products.  Nearly all of the retail sales in the US were made by Amazon (which purchased

the products outside the US and imported them into the US on its own), and not by either Virtual

Supply Inc. or by Yellow and Black Tools Ltd.

  29. Each of the Defendants directly targets consumers in the United States, including
Illinois and this judicial district, through fully interactive commercial Internet stores that allow
Illinois residents to purchase the accused products and ship the accused products to Illinois and
this judicial district. Each of the Defendants has sold the accused products to residents of Illinois

and is committing tortious acts in Illinois, engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of Illinois.

ANSWER:    For the purposes of this action, Defendants do not dispute that the court has

personal jurisdiction over them, although neither JCB Inc. nor JCB Manufacturing Inc. have any

involvement with the accused products.   JCB denies that any of the defendants is committing

tortious acts in Illinois, and that any of the defendants has wrongfully caused Plaintiffs any

injury, in the state of Illinois or otherwise. JCB is without knowledge or information sufficient to

form a belief as to the truth of the other allegations contained in this paragraph and, on that basis,

denies the same.

30.    Each of the Defendants has specifically committed acts of infringement in this judicial district and has purposefully availed itself of the privilege of conducting business with residents of this judicial district. Each of the Defendants has established sufficient minimum contacts with the State of Illinois such that it should reasonably and fairly anticipate being brought into court in Illinois. Accordingly, the exercise of jurisdiction over each of the Defendants comports with the traditional notions of fair play and substantial justice.

ANSWER:    For the purposes of this lawsuit, Defendants do not dispute that the court has

personal jurisdiction over them, although neither JCB Inc. nor JCB Manufacturing Inc. have any

involvement with the accused products.

31.    Venue is proper in this District under 28 U.S.C. § 1391(b)-(d).

ANSWER:    JCB does not contend that venue is improper.

## COUNT I
## FEDERAL TRADE DRESS INFRINGEMENT

32.    Plaintiffs incorporate all prior allegations as if set forth fully herein.

ANSWER:    JCB incorporates by reference JCB's responses to paragraphs 1 through 31 as if

fully stated herein.

33.    This Court has jurisdiction over the subject matter of this claim, this being a claim of trade dress infringement arising under Section 43 of the Lanham Act, codified in 15 U.S.C. § 1125(a).

ANSWER:     Admitted.

34.     This claim is for trade dress infringement of the non-descriptive, non-functional aspects of Plaintiffs' selection, design, and marketing efforts for DEWALT Products.

ANSWER:     JCB admits that this claim asserts trade dress infringement. JCB denies that

"selection" and "marketing efforts" are protectable as trade dress. JCB denies that all rights

asserted by Plaintiffs are for non-functional trade dress. JCB is without knowledge or

information sufficient to form a belief as to the truth of the other allegations of this paragraph.

35.     Plaintiffs have expended considerable time, effort, and resources to design and develop unique and distinctive colors and appearances for their entire family of DEWALT Products. The yellow and black color scheme has been featured prominently in Plaintiffs' in-store, on-site, and other advertisements and promotions for their DEWALT Products. This unique trade dress has become associated with the success of Plaintiffs' DEWALT Products and has become an indication of a single, high-quality source for those products in the minds of the relevant purchasing public. As a result, this non-descriptive, non-functional trade dress is a valuable, irreplaceable asset of Plaintiffs' business.

ANSWER:     JCB denies that all rights asserted by Plaintiffs are for non-functional trade dress,

and denies the suggestion that yellow and black in general serves as a source identifier for

DeWalt products. JCB is without knowledge or information sufficient to form a belief as to the

truth of the other allegations contained in this paragraph and, on that basis, denies the same.

36.     Long after Plaintiffs' adoption and use of the DEWALT yellow and black color scheme on the DEWALT Products and their packaging, Defendants commenced distributing, advertising, selling, and offering for sale in the United States yellow and black JCB power tools, battery packs and chargers for power tools, and power tool accessories using yellow and black packaging, including without limitation the following and combinations thereof (collectively, Defendants' yellow and black power tools, battery packs and chargers for power tools, power tool accessories, and associated packaging are hereinafter referred to as the "Infringing Goods").

| Product Name | Product Image |
|---|---|
| 20V Power Tool Battery USB Adaptor | |
| 12V Compact Drill Driver and Impact Driver | |

| Product Name | Product Image |
|---|---|
| 20V Cordless Oscillating Power Tool | |
| 20V Inspection Lamp | |

| Product Name | Product Image |
|---|---|
| 20V Cordless Brushless Impact Driver | |
| 20V Cordless Hammer Drill Driver | |
| 20V Rotary Impact Hammer Drill | |
| 20V Cordless Jigsaw | |
| 20V Lithium-Ion Battery 5.0Ah | |
| 20V Lithium-Ion 4.0Ah Battery | |

| Product Name | Product Image |
|---|---|
| 20V Cordless Brushless Miter Chop Saw | |
| 20V Cordless Drill Driver | |
| 20V Cordless Reciprocating Saw | |
| 20V Circular Saw | |
| 20V 5" Cordless Random Orbit Sander | |
| 20V Lithium-Ion 2.0Ah Battery | |



| Product Name | Product Image | Product Name | Product Image |
|---|---|---|---|
| 5" Angle Grinder 110V | | 20V 4-1/2-inch Angle Grinder | |
| Impact Drill Two-Speed 110V | | 9" Angle Grinder 110V | |
| 21 Piece Impact Driver Bit Set | | Miter Saw Stand | |
| 5 Piece Masonry Drill Bit Set | | Plier Tool Set | |
| 4 Piece Multi-Purpose Drill Bit Set | | 8 Piece Oscillating Multi-Tool Blade Set | |
| 18 Piece Jigsaw Blades | | Wood Saw Blade - 2 Piece Set | |

ANSWER:     JCB admits that Yellow and Black Tools and Virtual Supply distribute, advertise,

sell, and offer for sale in the United States yellow and black JCB power tools, battery packs, and

chargers for power tools, and power tool accessories using yellow and black packaging,

including the examples depicted.  JCB denies that JCB Inc. and JCB Manufacturing Inc. did so.

JCB denies Plaintiffs' characterization that such products are "Infringing Goods".  JCB is

without knowledge or information sufficient to form a belief as to the truth of the other allegations of this paragraph and, on that basis, denies the same.

37.    Exemplary images of Plaintiffs' DEWALT Products and Defendants' Infringing Goods are shown below.



| Plaintiffs' DEWALT Products | Defendants' Infringing Goods |
|---|---|
| 20V MAX Compact 1/2 in. Hammer Drill | 20V Cordless Hammer Drill Driver |
| 60V MAX* Cordless Reciprocating Saw | 20V Cordless Reciprocating Saw |
| 20V MAX Cordless Jig Saw | 20V Cordless Jigsaw |
| 20V MAX Lithium-Ion 1.5Ah Battery | 20V Lithium-Ion 2.0Ah Battery |



ANSWER:    JCB admits that the images depicted reflect true and accurate images of JCB

products, but denies the suggestion that these images accurately reflect everything that

purchasers see when buying or using the products.  JCB denies Plaintiffs' characterization that

the JCB products are "Infringing Goods." JCB is without knowledge or information sufficient to

form a belief as to the truth of the other allegations of this paragraph and, on that basis, denies

the same.

38.    Defendants also sell their Infringing Goods using yellow and black packaging,
such as the 20V Brushless Hammer Drill Driver shown below next to Plaintiffs' iconic
DEWALT yellow and black packaging.



ANSWER:    JCB admits that Yellow and Black Tools and Virtual Supply sell products using yellow and black packaging, and that the depicted images appear to be unaltered.  It denies that JCB Inc. or JCB Manufacturing Inc. is doing so.  JCB also denies the suggestion that these images accurately represent all that purchasers see when buying or using the products.   JCB denies Plaintiffs' characterization that JCB's products are "Infringing Goods", and denies the assertion that the pictured DeWalt packaging is "iconic."  JCB is without knowledge or information sufficient to form a belief as to the truth of the other allegations of this paragraph and, on that basis, denies the same.

39.    Defendants' selection and use of substantially similar colors and overall appearances for their power tool products and accessories (and associated packaging) is likely to mislead and confuse the public as to the source, sponsorship, and/or affiliation of Defendants' Infringing Goods. Because of the nearly identical look of Defendants' Infringing Goods and packaging to Plaintiffs' non-descriptive, non-functional trade dress associated with Plaintiffs' DEWALT Products and packaging, the public is likely to believe that Defendants' products are affiliated or associated with, or sponsored by, Plaintiffs.

ANSWER:    Denied.

40.    As shown below, Defendants could have selected an alternative aesthetic design and achieved the same functionality as their current Infringing Goods.



ANSWER:    Denied.

41.     Indeed, on summary judgment in the Positec Litigation, the court in the Northern District of Illinois rejected the defendants' argument that the yellow and black colors in Plaintiffs' trade dress are functional, crediting Plaintiffs' evidence of "leading power tool manufacturers that produce tools without yellow colors, instead using red, teal or green" and "manufacturers [that] produce construction helmets not only in yellow, but also in orange, blue, red and black, thereby undermining [d]efendants' claim that certain colors signify safety in the construction or tool industry." See Black & Decker Corp. v. Positec USA Inc., No. 11-CV-5426, 2015 WL 1543262, at *33 (N.D. Ill. Mar. 31, 2015). See also Pro-Tech, 26 F. Supp. 2d at 867 (holding that "the yellow and black color scheme on the DeWalt line of professional power tools constitutes a primarily nonfunctional trade dress").

ANSWER:     JCB is without knowledge or information sufficient to form a belief as to the truth

of the allegations of this paragraph and, on that basis, denies the same.

42.     The activities of Defendants complained of herein constitute willful and intentional infringement of Plaintiffs' trade dress. Defendants' unauthorized use of their Infringing Goods, which duplicate or otherwise imitate Plaintiffs' unique trade dress, began years after the DEWALT yellow and black color scheme became famous and strongly associated with Plaintiffs, and Defendants continue their infringement despite having full notice and knowledge of Plaintiffs' prior rights. Defendants' use of Plaintiffs' yellow and black color scheme is without Plaintiffs' consent, is likely to cause confusion and mistake in the minds of purchasers, and creates the false impression that Defendants' Infringing Goods are authorized, sponsored, or approved by Plaintiffs.

ANSWER:     Denied.

43.     Defendants' wrongful acts will continue unless enjoined by this Court.

ANSWER:     Denied.

44.     Plaintiffs have suffered, and will continue to suffer, substantial and irreparable harm and damage as a result of Defendants' infringement of Plaintiffs' DEWALT trade dress, in an amount to be determined at trial.

ANSWER:     Denied.

## COUNT II
## TRADEMARK INFRINGEMENT

45.     Plaintiffs incorporate all prior allegations as if set forth fully herein.

ANSWER:     JCB incorporates by reference JCB's responses to paragraphs 1 through 44 as if

fully stated herein.

46.     Plaintiffs formally introduced the DEWALT line of power tools in January 1992, which has been continuously expanded to include an entire family of DEWALT Products. Besides the superior performance characteristics of such products, Plaintiffs have always sought to associate the DEWALT Products with a distinctive yellow and black color scheme.

ANSWER:     JCB is without knowledge or information sufficient to form a belief as to the truth

of the allegations of this paragraph and, on that basis, denies the same.

47.     Plaintiffs own and have standing to sue for infringement of the family of yellow and black color trademarks associated with the DEWALT Products, including common law trademarks and the following U.S. Trademark Registration Nos. (collectively, the "DEWALT Trademarks"):

| | | | |
|---|---|---|---|
| 1,734,403 | 2,348,073 | 2,737,010 | 3,064,656 |
| 1,734,404 | 2,348,074 | 2,770,444 | 3,064,663 |
| 2,347,976 | 2,437,867 | 2,831,672 | 3,064,666 |
| 2,347,981 | 2,447,316 | 2,901,234 | 3,064,671 |
| 2,347,982 | 2,447,318 | 2,902,806 | 3,066,990 |
| 2,347,983 | 2,447,319 | 2,909,314 | 3,066,991 |
| 2,348,049 | 2,447,321 | 2,999,545 | 3,067,004 |
| 2,348,050 | 2,447,322 | 3,064,649 | 3,727,526 |
| 2,348,051 | 2,447,323 | 3,064,650 | 4,062,422 |
| 2,348,052 | 2,447,327 | 3,064,652 | 5,772,583 |
| 2,348,070 | 2,447,328 | 3,064,653 | |
| 2,348,072 | 2,474,794 | 3,064,654 | |

ANSWER:     JCB denies that each of the cited trademarks are "yellow and black color

trademarks," denies that JCB has infringed the particular color schemes covered by the cited

registrations, and denies that each of the cited registrations is valid.  JCB is without knowledge

or information sufficient to form a belief as to the truth of the other allegations of this paragraph

and, on that basis, denies the same.


48.     The DEWALT Trademarks are in full force and effect and many have become incontestable pursuant to 15 U.S.C. § 1065.

ANSWER:     As understood to mean that the registrations listed above are shown as "live" in

the records of the USPTO, and that section 15 affidavits have been accepted for some, this is

admitted. To the extent that this paragraph purports to suggest that all of the cited registrations are valid, it is denied.

49.     Plaintiffs manufacture and sell DEWALT Products bearing the DEWALT Trademarks and have been directly injured by Defendants' infringing activities. Plaintiffs and Defendants directly compete with each other for the sale of power tool and power tool accessory products in the United States.

ANSWER:     JCB denies that Plaintiffs have been injured, denies that JCB has engaged in

infringing activities, and denies that JCB Inc, and JCB Manufacturing, Inc. compete with

Plaintiffs for the sale of "power tool and power tool accessory products" as that term is used

here. JCB admits that Plaintiffs and Yellow and Black Tools and Virtual Supply directly

compete with each other for the sale of power tool and power tool accessory products in the

United States. JCB is without knowledge or information sufficient to form a belief as to the truth

of the other allegations of this paragraph and, on that basis, denies the same.

50.     Plaintiffs have standing to sue for infringement of the DEWALT Trademarks-in-suit because they collectively own all right, title, and interest in and to the DEWALT Trademarks and Plaintiffs' DEWALT Products sold under those trademarks, including the right to collect for past damages. Plaintiffs have suffered injury from Defendants' acts of trademark infringement.

ANSWER:     JCB denies that Plaintiffs have standing to sue for infringement of the DEWALT

trademarks that are not valid, denies that Plaintiffs own all right, title, and interest in and to the

DEWALT trademarks that are not valid, denies that Plaintiffs have suffered past damages or

injury, and denies that JCB has engaged in acts of trademark infringement. JCB is without

knowledge or information sufficient to form a belief as to the truth of the other allegations of this

paragraph and, on that basis, denies the same.

51.     Plaintiffs' DEWALT Products are sold through nearly all leading hardware stores and major retailers, including Home Depot, Sears, Lowe's and Menard's, throughout the United States, and in Illinois and this judicial district.

19

ANSWER:    JCB is without knowledge or information sufficient to form a belief as to the truth

of the allegations of this paragraph and, on that basis, denies the same.

52.    As a result of Plaintiffs' extensive advertising and promotion, the DEWALT
Products have become widely and favorably known and recognized in the trade and among
purchasers and users of such products as originating with Plaintiffs. The DEWALT yellow and
black color scheme has become indicative of high-quality power tools, battery packs and
chargers for power tools, and power tool accessories for use in industrial, commercial,
professional, and do- it-yourself applications. The non-functional color combination alone
attracts customers and creates an immediate association with Plaintiffs' DEWALT Products and
quality image.

ANSWER:    JCB denies that Plaintiffs' referenced color combination is non-functional, and

denies that a yellow-and-black color scheme in general is a source identifier for DeWalt

products.  JCB is without knowledge or information sufficient to form a belief as to the truth of

the other allegations of this paragraph and, on that basis, denies the same.

53.    Long after Plaintiffs' adoption and use of the DEWALT yellow and black color
scheme on the DEWALT Products and packaging, and long after Plaintiffs' federal registration
of their DEWALT Trademarks, Defendants commenced distributing, advertising, selling, and
offering for sale in the United States their Infringing Goods. Examples of Defendants' Infringing
Goods are shown below compared to specific examples of DEWALT Trademarks.

| Plaintiffs' U.S. Trademarks | | Defendants' Infringing Goods | |
|---|---|---|---|
| Reg. No. | Image[1] | Image | Name |
| 2,347,981 |  |  | 20V Reciprocating Saw |
| 2,348,049 |  |  | 5" Angle Grinder 110V |
| 2,348,051 |  |  | 5" Cordless Random Orbit Sander Power Tool |

ANSWER:    JCB denies that JCB Inc. or JCB Manufacturing have ever distributed, advertised,

sold, or offered to sell any of the products that Plaintiffs are challenging.  JCB also denies

---

[1] Cross-hatching in the registered trademark images above represents the color yellow and solid black represents the
color black.

Plaintiffs' characterization that any of JCB's products are "Infringing Goods." JCB admits that

the images depicted are unaltered copies of the drawings of the particular yellow and black color

schemes covered by the referenced trademark registrations, and of JCB's products, respectively.

JCB denies any suggestion that these images alone are a complete and accurate representation of

what is protected, or what purchasers see when buying or using the products. JCB is without

knowledge or information sufficient to form a belief as to the truth of the other allegations of this

paragraph and, on that basis, denies the same.

54.     Defendants are manufacturing, distributing, advertising, selling, and offering for
sale their Infringing Goods into this judicial district and throughout the United States.

ANSWER:     JCB denies Plaintiffs' characterization that JCB's products are "Infringing

Goods". JCB admits that Yellow and Black Tools and Virtual Supply manufacture, distribute,

advertise, sell, and offer for sale the products in question into this judicial district and throughout

the United States, but denies that either JCB Inc. or JCB Manufacturing Inc. do so.

55.     The activities of Defendants complained of herein constitute willful and
intentional infringement of the DEWALT Trademarks. Defendants' unauthorized use of their
Infringing Goods, which duplicate or otherwise imitate the DEWALT Trademarks, began years
after the DEWALT yellow and black color scheme had become a famous trademark of Plaintiffs,
and Defendants have continued their infringement despite having full notice and knowledge of
Plaintiffs' prior rights. Defendants' use of the DEWALT Trademarks is without Plaintiffs'
consent, is likely to cause confusion and mistake in the minds of purchasers, and creates the false
impression that Defendants' Infringing Goods are authorized, sponsored, or approved by
Plaintiffs.

ANSWER:     Denied.

56.     The DEWALT Trademarks are fanciful and arbitrary and are associated in the
mind of the public exclusively with Plaintiffs.

ANSWER:     Denied.

57.     Based on Plaintiffs' extensive advertising, sales, and the wide popularity of the
DEWALT Products, the DEWALT Trademarks have acquired secondary meaning so that any
product and advertisement bearing such trademarks is immediately associated by purchasers and
the public as being a product of, and affiliated with, Plaintiffs.

ANSWER:     JCB is without knowledge or information sufficient to form a belief as to the truth

of the allegations of this paragraph and, on that basis, denies the same.

58.     Defendants have copied and imitated the DEWALT Trademarks in connection with selling, distributing, and advertising Defendants' Infringing Goods.

ANSWER:     Denied.

59.     Defendants' activities set forth herein constitute use in commerce of the DEWALT Trademarks.

ANSWER:     Denied.

60.     Defendants have used the DEWALT Trademarks without Plaintiffs' consent or authorization. Defendants' use, including the sale and distribution of the Infringing Goods in interstate commerce, is likely to cause confusion and mistake in the minds of the public, leading the public falsely to believe that Defendants' Infringing Goods emanate or originate from Plaintiffs, or falsely to believe that Plaintiffs have approved, sponsored, or otherwise associated themselves with Defendants.

ANSWER:     Denied.

61.     Defendants have intentionally used the DEWALT Trademarks in connection with their offering for sale, sale, and distribution of goods associated therewith knowing that such trademarks are Plaintiffs' exclusive property.

ANSWER:     Denied.

62.     Defendants' conduct is intended to exploit the goodwill and reputation associated with the DEWALT Trademarks.

ANSWER:     Denied.

63.     Defendants engage in the aforementioned activity with the intent to confuse and deceive consumers into believing that Defendants, and the goods they sell, are sponsored by, or affiliated or associated with, Plaintiffs, when Defendants are not.

ANSWER:     Denied.

64.     Defendants' unauthorized use of the DEWALT Trademarks as set forth herein has resulted in Defendants unfairly benefiting from Plaintiffs' advertising and promotion, and profiting from Plaintiffs' reputation and their registered trademarks, to the substantial and irreparable injury of the public, Plaintiffs, the DEWALT Trademarks, and the substantial goodwill represented thereby.

ANSWER:     Denied.

65.     Defendants' aforesaid acts constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

ANSWER:     Denied.

66.     Defendants' acts have caused, and will continue to cause, great and irreparable injury to Plaintiffs, and unless such acts are restrained by this Court, Defendants will continue such acts, thereby causing Plaintiffs to continue to suffer great and irreparable injury.

ANSWER:     Denied.

67.     Plaintiffs have no adequate remedy at law and are suffering irreparable harm and damage as a result of the aforesaid acts of Defendants in an amount to be determined at trial.

ANSWER:     Denied.

## COUNT III
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

68.     Plaintiffs incorporate all prior allegations as if set forth fully herein.

ANSWER:     JCB incorporates by reference JCB's responses to paragraphs 1-67.

69.     This Court has jurisdiction over the subject matter of this claim, this being a claim of unfair competition and false designation of origin arising under Section 43 of the Lanham Act, codified in 15 U.S.C. § 1125(a).

ANSWER:     For purposes of this action, JCB does not dispute that the court has subject matter jurisdiction over this claim.

70.     Defendants are fully aware of the popularity of the entire line of DEWALT Products and the clear association of the DEWALT color combination with that line of products. Defendants intentionally copied and offer in interstate commerce power tools, battery packs and chargers for power tools, power tool accessories, and associated packaging that create the same overall visual effect and appearance as the family of tools in Plaintiffs' line of DEWALT Products. Defendants' Infringing Goods were designed to have the same distinctive overall appearance and look as the DEWALT Products and are confusingly similar in total image, appearance, and overall aesthetic look. As a result, the public is, and is likely to be, confused.

ANSWER:     Denied.

71.     Defendants have used in commerce, and continue to use in commerce, the DEWALT Trademarks and yellow and black color scheme to unfairly benefit from Plaintiffs' success by selling in this jurisdiction the same products bearing the same yellow and black colors.

ANSWER:     Denied.

72.     Defendants could have selected alternative colors.

ANSWER:     JCB denies the suggestion that it could refrain from using yellow and black and

still prevent purchaser confusion about the source of its goods.  Eliminating the use of those

colors would preclude JCB from using its distinctive yellow-and-black JCB trademark, which

purchasers have relied upon to identify JCB as the source of JCB products since long prior to

Plaintiffs' first use of yellow and black.

73.     Defendants have used Plaintiffs' yellow and black color scheme on their
Infringing Goods with the express intent to pass off Defendants' Infringing Goods as those of
Plaintiffs and to cause confusion and mistake, and to deceive and mislead the purchasing public
into believing that Defendants' products and/or Defendants are authorized, sponsored, affiliated
with, or associated with Plaintiffs, and to trade upon Plaintiffs' reputation for high-quality and to
improperly appropriate to themselves Plaintiffs' valuable trademark and trade dress rights.

ANSWER:     Denied.

74.     Sales of Defendants' Infringing Goods are likely to cause consumer confusion
because of the similarity in color, appearance, and look between Defendants' Infringing Goods
and Plaintiffs' DEWALT Products. Consumers will believe that Defendants' Infringing Goods
are either manufactured, licensed, affiliated with, or sponsored by Plaintiffs, or are being placed
on the market with Plaintiffs' consent and/or actual or implied authority. As a result, Plaintiffs
have been and will continue to be irreparably injured by Defendants' improper acts.

ANSWER:     Denied.

75.     Defendants have willfully and deliberately created such confusion by copying and
reproducing the distinctive and unique yellow and black color combination and overall product
appearance of Plaintiffs' DEWALT Products; and have advertised and sold, and threaten to
advertise and sell, their products so as to cause public confusion and deception. Further,
Defendants' sales and offers for sale of their Infringing Goods have caused and threaten to cause
Plaintiffs the loss of their valuable goodwill and reputations for making and selling distinctive,
unique, and high-quality power tool products under the DEWALT name and color combination.

ANSWER:     Denied.

76.     Defendants' aforesaid acts constitute the use in commerce of false designations of
origin and false and/or misleading descriptions or representations, tending to falsely or
misleadingly describe and/or represent Defendants' products as those of Plaintiffs in violation of
Section 43 of the Lanham Act, 15 U.S.C. §1125(a).

ANSWER:     Denied.

77.     Defendants' wrongful acts will continue unless enjoined by this Court.

<u>ANSWER:</u>     Denied.

78.     Plaintiffs have no adequate remedy at law and are suffering irreparable harm and damage as a result of the aforesaid acts of Defendants in an amount to be determined at trial.

<u>ANSWER:</u>     Denied.

**COUNT IV**
**STATE STATUTORY AND COMMON LAW TRADEMARK INFRINGEMENT,**
**UNFAIR COMPETITION, AND DECEPTIVE TRADE PRACTICES**

79.     Plaintiffs incorporate all prior allegations as if set forth fully herein.

<u>ANSWER:</u>     JCB incorporates by reference JCB's responses to paragraphs 1-78 as if fully

stated herein.

80.     This claim arises under the pertinent statutes and common law of this State relating to trademark infringement, unfair competition, and deceptive trade practices. This Court has jurisdiction over the subject matter of this claim pursuant to the provisions of 28 U.S.C. § 1338(b), this being a claim of unfair competition and deceptive trade practices joined with a substantial and related claim under the Trademark Laws of the United States, and under 28 U.S.C. § 1367.

<u>ANSWER:</u>     For purposes of this action, JCB does not dispute this.

81.     Defendants' wrongful conduct constitutes unfair methods of competition and unfair and deceptive acts or practices in trade or commerce and creates a likelihood of confusion, misunderstanding, or deception in the public's mind as to the origin of the parties' products, all in violation of 815 ILCS 505/1 et seq., 815 ILCS 510/1 et seq., and the common law of Illinois. Defendants have also been and are engaged in deceptive trade practices within the meaning of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq., and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 et seq.

<u>ANSWER:</u>     Denied.

82.     Plaintiffs own all right, title, and interest in and to the DEWALT Trademarks, trade dress, trade names, designs, symbols, and logos used by Plaintiffs by virtue of their extensive manufacture and sale of yellow and black products and packaging bearing such trade names, trademarks, designs, symbols, and logos (collectively, Plaintiffs' "common law trademarks"), as set forth in the preceding paragraphs of this Complaint. In particular, because of their enormous sales and publicity, Plaintiffs have acquired common law trademark rights in and to their yellow and black color scheme for their DEWALT Products.

25

ANSWER:     JCB denies that each of the DEWALT Trademarks is valid. JCB is without

knowledge or information sufficient to form a belief as to the truth of the other allegations of this

paragraph and, on that basis, denies the same.

83.    The Infringing Goods imported, advertised, distributed, offered for sale, and sold
by Defendants in the United States incorporate matter constituting replicas and imitations of
Plaintiffs' common law trademarks. Such unauthorized use by Defendants of Plaintiffs' common
law trademarks constitutes trademark infringement, unfair competition, and deceptive trade
practices, and is likely to cause confusion and mistake in the minds of the trade and the
purchasing public as to the source of the goods, and to cause purchasers or potential purchasers
to believe that such goods are associated with Plaintiffs when, in fact, they are not.

ANSWER:     Denied.

84.    Defendants have willfully and intentionally misappropriated one or more of
Plaintiffs' common law trademarks with the intent of causing confusion, mistake, and deception
as to the source of their goods and with the intent to palm off their goods as those of Plaintiffs
and to place others in the position to palm off their goods as those of Plaintiffs. Accordingly,
Defendants have committed trademark infringement, unfair competition, and deceptive trade
practices under the common law.

ANSWER:     Denied.

85.    By such actions in infringing Plaintiffs' common law trademarks, Defendants are
improperly trading upon the enviable reputation and goodwill of Plaintiffs and impairing
Plaintiffs' valuable rights in and to such trademarks.

ANSWER:     Denied.

86.    Plaintiffs have no adequate remedy at law. The conduct of Defendants has caused
and, if not enjoined, will continue to cause, irreparable damage to Plaintiffs' rights in and to their
trademarks and trade dress, and to Plaintiffs' businesses, reputations, and goodwill.

ANSWER:     Denied.

## 12(B) DEFENSES

1.    Plaintiffs have no claim against JCB Inc. or JCB Manufacturing, Inc., neither of

which has any involvement with the products that Plaintiffs are understood to be complaining

about.

2.    The allegation of a "family of marks" claim does not state a claim upon which relief can be granted.   Plaintiffs have not alleged (and cannot prove) that their use of yellow and black in general was recognized by consumers as a trademark prior to JCB's use of yellow and black in general in the heavy-duty market.  See *AM General Corp. v. DaimlerChrysler Corp.* (holding that a plaintiff making a claim like the plaintiffs' claim must prove that the feature that it asserts is protected under its family of marks argument achieved distinctiveness before the defendants began using a similar design in either the same <u>or</u> "a different market.")

**AFFIRMATIVE DEFENSE**

3.    Some uses of black (such as use of black on parts like triggers that are frequently exposed to dirt and grime) are functional.

**COUNTERCLAIM**

4.    On information and belief, many of the registrations that the plaintiffs have asserted are invalid on the ground of abandonment.

5.    Reg. nos. 2347982, 2348051, 2437867, 2447318, 2447319, 2447323, 2447328, 2474794, 2737010, 3064649, 3064653, 3064656, 3064663, and 30646671 all cover particular color schemes that are not found on the stated DeWalt products that are sold on Amazon.  On information and belief, these registered color schemes are no longer being used.

6.    By statute, nonuse of a mark for a period of three years raises a presumption of an intent to abandon the mark.

7.    Owners of trademark registrations are obliged to periodically file proof with the USPTO that their registered marks are still in use.  In connection with reg. no. 2347982, for example, Plaintiffs were required in 2019 to file proof of that they were was continuing to sell cordless drills with the color scheme seen on the left below (in which the hatching represents where yellow coloring is used).  They failed to do so, instead filing evidence that the plaintiffs had in fact switched to a different, <u>black-handled </u>color scheme (seen on the right below) for those drills.



8.    On information and belief, therefore, at least some of the registered color schemes were discontinued at least three years ago, raising a presumption of no intent to resume use.

9.    On information and belief, one or more of the color schemes covered by the registrations that Plaintiffs have raised in this action have been abandoned.

10.    This court has the authority, under 15 U.S.C. § 1119, to order the cancellation of registrations asserted by a party in an action.

11.    A registration for a mark that has been abandoned can be cancelled under 15 U.S.C. § 1064(3) even if the registration has so-called "incontestable" status.

The court is, therefore, requested to review the validity of all the registrations that the plaintiffs have asserted and order the USPTO to cancel those registration that cover color schemes that the plaintiffs have abandoned in favor of new color schemes.

Dated: November 1, 2022      By: */s/ Benjamin T. Horton*
                                     Benjamin T. Horton
                                     Thomas S. Key
                                     Richard M. LaBarge
                                     Marshall Gerstein & Borun LLP
                                     6300 Willis Tower
                                     233 S. Wacker Dr.
                                     Chicago, IL 60606
                                     E: rlabarge@marshallip.com
                                     E: bhorton@marshallip.com
                                     E: tkey@marshallip.com

                                     *Counsel for Defendants*
                                     *JCB INC., JCB MANUFACTURING, INC., and*
                                     *VIRTUAL SUPPLY, INC. d/b/a/ BLUEDEALZ*